IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KIARI C. SWAIN | * | |
| Plaintiff | | |
| v. | * | CIVIL ACTION NO. DKC-06-2039 |
| WARDEN | * | |
| Defendant. | | |
| | *** | |

### MEMORANDUM

Kiari C. Swain ("Swain"), who is confined at the Maryland Correctional Adjustment Center ("MCAC") in Baltimore, Maryland, filed a letter complaint for damages on August 7, 2006, claiming that on February 18, 2006, he was: moved from MCAC A-Pod to B-Pod; cited with a notice of infraction after an MCAC officer who had inventoried Swain's personal property claimed that she found a bottle containing human feces; placed on a special management meal ("food loaf") for 14 days; given 7 days cell restriction; and removed from MCAC level four classification status. Paper No. 1.   Swain states that although he was found not guilty of the infraction, he was not: (i) taken off the special management meal; (ii) returned to level four classification status; and (iii) removed from cell restriction.  *Id*.  He further complaints that he was not returned to A-Pod until 30 days after he was found not guilty of the infraction.  *Id*.

The letter complaint was construed as a 42 U.S.C. § 1983 civil rights action. As the court finds that the complaint does not plead a claim of constitutional dimension, the cause of action shall be summarily dismissed.

To prevail on a Fourteenth Amendment due process claim, Swain must first demonstrate that he was deprived of life, liberty or property by government action.  *See Phillips v. Norris*, 320 F.3d 844, 846-847 (8th Cir. 2003).  Because there is no allegation that he was deprived of life or property,

Swain must identify a liberty interest to sustain his due process claim. The Supreme Court has recognized "that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which....imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  Following the reasoning of the Supreme Court in *Sandin*, the court finds that Swain has no liberty interest in: (i) remaining in a particular prison housing pod; (ii) staying off cell restriction; or (iii) being classified to a particular status under the MCAC Quality of Life Incentive Program ("QOLIP").[1]  Swain is housed at MCAC, also known as "Supermax."[2]  Inmates at MCAC and other high security prisons may be routinely subject to intra-prison housing and classification changes and restrictions.   There is no allegation that Swain's housing status in February and March, 2005, imposed a significant hardship.

---

[1]     The MCAC QOLIP program was adopted in 2002. Its purpose was to: (1) create a safer environment for inmates and staff by reducing the incidence of assaults, uses of force, serious incidents, inmate weapons, and recidivism; (2) provide a behavior-driven, progressive incentive (level) system for the management of difficult inmates; and (3) positively reinforce appropriate inmate behaviors with education and programming (as staff and resources permit) as well as increasing property and privileges.  *See* Division of Correction Directive ("DCD")100-166, issued August 5, 2002.  The policy was developed in an attempt to "improve the behavior of ... inmates with the use of a behavior-driven, progressive incentive system in conjunction with a discipline system." *Id*., § V. "Policy"  The DCD discusses development of an individualized behavior management plan created by staff to target the particular disruptive patterns of each prisoner and to specify the sanctions to take place in response to the targeted behaviors.  Among the sanctions contemplated are regression in the quality level assignment and temporary loss of privileges, including, but not limited to, recreation, use of a mattress during the day, television, radio, commissary, property, visits, and the substitution of regular meals with a "special management meal," also known as food loaf.  *Id*.  Compliant behavior is rewarded with additional privileges, including outside recreation, more clothing, additional library privileges, more visitation, congregation with fellow prisoners, and fewer body restraints during recreation. The ultimate goal is to improve behavior so that a prisoner may return to a regular prison within the DOC. *Id.*.

[2]     MCAC opened over eighteen years ago. With the exception of death row prisoners and federal detainees, prisoners are not classified directly to MCAC based upon the nature of their convictions. Rather, prisoners housed at other Division of Correction facilities are transferred to MCAC after they have been deemed special management problems by virtue of their institutional history. *See* DCDs 100-160 & 100-161.

2

Consequently, no due process right is implicated in a decision relating to Swain's prison housing.[3]

Further, the Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id*. To prevail on an Eighth Amendment claim, an inmate must prove both an objective and a subjective element. *See Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). "First, the alleged deprivation, objectively, must be 'sufficiently serious;' the prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities;' or the prison official must incarcerate the inmate under conditions 'posing a substantial risk of serious harm.'" *Farmer*, 511 U.S. at 834. "Second, the prison official, subjectively, must act with 'deliberate indifference' to inmate health or safety." *Id*.

This court has previously held that placement on the Special Management Meal plan does not constitute cruel and unusual punishment and does not, in the absence of showing any adverse health effects, constitute an atypical and significant hardship so as to deprive an inmate of a due process liberty interest.[4] *See Doucett v. Warden, MCAC*, 2001 WL 604187 (D. Md. May 31, 2001). *See also Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977); *Adams v. Kincheloe*, 743 F. Supp. 1385, 1390-92 (E.D. Wash. 1990); *United States v. Michigan*, 680 F. Supp. 270, 274-77 (W.D. Mich. 1988). There is nothing alleged which establishes that Swain's placement on the Special Management Meal was medically contraindicated. Further, he has not claimed that his health was

---

[3] Insofar as Swain raises a due process challenge to disciplinary infraction process, the claim shall likewise be dismissed. Four days after the being cited with rule violations, Swain went before an adjustment hearing officer who ruled in Swain's favor. At no point in the complaint does Swain indicate how the adjustment process violated due process or caused him injury.

[4] In *Sandin*, the Supreme Court disapproved a district court case suggesting that an inmate had a due process right not to be placed on food loaf. *See Sandin*, 515 U.S. at 482-83. Because Swain has no liberty interest to be free from placement on meal loaf, his due process claim fails as a matter of law.

adversely affected by his placement on the meal.

    For the aforementioned reasons, Swain's complaint shall be dismissed without requiring a response from Defendant.


Date:     8/15/06                                         /s/                        
                                                             DEBORAH K. CHASANOW  
                                                             United States District Judge